peals the dismissal of the action by the district court.

■ Pope ignores the question of *res judicata* and raises two grounds for appeal. The first is that Title VII actions should not be dischargeable in bankruptcy; the second is that the bankruptcy court should have granted a change of venue.[1] Manville asserts that the bankruptcy court's determination is *res judicata* and that the present appeal is an improper collateral attack on that judgment.

We note initially that the Manville bankruptcy proceeding is still pending with no final disposition having been reached. In the light of this fact, we examine whether the district court's ruling was a proper exercise of its authority.

■ A stay granted against an action in district court continues until the bankruptcy case is closed, dismissed, or discharge is granted or denied, or until the bankruptcy court grants some relief from the stay. 11 U.S.C. § 362(a), (c)(2), (d), (e), (f). None of these events has taken place.

■ We recognize that the stay, by its statutory words, operates against "the commencement or continuation" of judicial proceedings. No specific reference is made to "dismissal" of judicial proceedings. Nevertheless, it seems to us that ordinarily the stay must be construed to apply to dismissal as well. First, if either of the parties takes any step to obtain dismissal, such as motion to dismiss or motion for summary judgment, there is clearly a continuation of the judicial proceeding. Second, in the more technical sense, just the entry of an order of dismissal, even if entered sua sponte, constitutes a judicial act toward the disposition of the case and hence may be construed as a "continuation" of a judicial proceeding. Third, dismissal of a case places the party dismissed

in the position of being stayed "to continue the judicial proceeding," thus effectively blocking his right to appeal. Thus, absent the bankruptcy court's lift of the stay, or perhaps a stipulation of dismissal, a case such as the one before us must, as a general rule, simply languish on the court's docket until final disposition of the bankruptcy proceeding. In making these observations, we expressly do not decide any case except the one before us; we do not wish unnecessarily, or with technicality, to impede the district court in maintaining a current docket. We simply hold that the entry of the particular order of dismissal in the appeal before us was prohibited by the section 362 stay.

We therefore reverse the judgment of dismissal for the reasons stated herein, and remand the case to the district court for appropriate action not inconsistent with this opinion.[2]

REVERSED AND REMANDED.

**CHILDREN'S HOSPITAL,**
Plaintiff-Appellee,

v.

**Sandra WHITCOMB, Individually and As Administratrix of the Estate of Her Minor Son Darren Whitcomb, Defendant-Appellant.**

No. 85–3109.

United States Court of Appeals,
Fifth Circuit.

Dec. 13, 1985.

---

Henican, James & Cleveland, Robert Angelle, Metairie, La., for defendant-appellant.

Chaffe, McCall, Phillips, Toler & Sarpy, James A. Babst, Eleanor Lasky, New Orleans, La., for plaintiff-appellee.

Before REAVLEY, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

## OPINION

JERRE S. WILLIAMS, Circuit Judge:

Appellee, Children's Hospital, sued for a declaratory judgment with respect to the meaning and application of the provisions of its self-insured Employee Welfare Benefit Plan under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. Appellant, Sandra Whitcomb, and her minor son, Darren Whitcomb, were members and participants in the Plan when Darren Whitcomb was treated in DePaul Hospital, New Orleans, Louisiana, for mental and emotional disorders. The Children's Hospital Plan provides for maximum major medical benefits of $1,000,000 but with a limitation of $50,000 for medical expenses incurred in connection with mental illnesses. The Whitcomb child's cost of treatment for the mental disorder exceeded the $50,000 limit, and his mother made claim for the full amount with the administrator of the Children's Hospital Plan, Northwestern National Life Insurance Company. The administrator denied payment in excess of $50,000 under the terms of the Children's Hospital Plan.

The district court granted the motion of Children's Hospital for a summary declaratory judgment limiting its liability under the Plan to $50,000. It held that under ERISA the provisions of the Plan control

and supersede any conflicting Louisiana law. We affirm the district court's judgment.

The provisions of the Children's Hospital Plan under which appellant claims are clear. The limitation on treatment for physical illness is $1,000,000, but the limitation on treatment for mental illness is $50,000. Appellant, however, claims that under the Plan she is entitled to recovery for treatment for mental illness in excess of $50,000 because of the provisions of LA. R.S. 22:669, passed in 1981, which require that under such plans benefits "shall be payable for services rendered for the treatment of mental or nervous disorders, or both, under the same circumstances and conditions as benefits are paid ... for all other diagnoses, illnesses, or accidents."

There is an issue raised between the parties as to whether this statutory provision would be applicable since it went into effect after appellant first joined the Children's Hospital Plan. Appellant asserts, however, that her participation in the Plan had been renewed since the statutory requirement became law. But as the consideration of the critical issue below reveals, it is not necessary that this disputed factual contention be resolved.

The Children's Hospital Plan, of which appellant was a member, provides for its interpretation under Louisiana law. It is well established, however, that the provisions of ERISA exercise broad preemption over state laws with respect to all such plans to which ERISA applies. It is conceded this is an ERISA plan.

The determination of whether the Louisiana statute in this case has been preempted by ERISA is to be made by the analysis of three statutory provisions contained in Section 514 of ERISA, 29 U.S.C. § 1144. Subsection 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" under the statute except as provided in the immediately following subsection, Subsection (b).

Subsection (b)(2)(A) provides that the statute shall not "be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."

This provision in turn is limited by the so-called deemer provision of Subsection (b)(2)(B). It provides that neither an employee benefit plan nor a trust established under such a plan "shall be deemed to be an insurance company or other insuror, bank, trust company, or investment company, or to be engaged in the business of insurance or banking for the purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies."

We have already applied these provisions in our opinion in *Dedeaux v. Pilot Life Ins. Co.*, 770 F.2d 1311 (5th Cir.1985), in which we found that these provisions did not result in the preemption of an employee's state claim against the insurance company for failure to pay insurance benefits under the employer's group insurance policy. We relied upon the specific provisions of the exception contained in (b)(2)(A) to reach this result. But the case before us does not involve an insured plan.

The controlling interpretation of these provisions of ERISA as they apply to both insured and self-insured plans was handed down this year in *Metropolitan Life Ins. Co. v. Massachusetts*, —— U.S. ——, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). *Metropolitan Life* involved a Massachusetts statute somewhat analogous to the Louisiana statute here at issue. The Massachusetts statute required all insurors, including those selling policies to employee benefit plans, to provide insurance coverage for mental health care services. The unanimous Supreme Court held that the Massachusetts statute was not preempted by the federal ERISA statute. The Court held that the exception relating to state laws regulating insurance was applicable, Section 514(b)(2)(A), and thus barred the broad preemption stated in the basic provision, Section 514(a).

■ The critical aspect of the Children's Hospital Plan is that it is an uninsured plan. Because of this controlling distinction, the deemer clause comes into play and specifically provides that the Children's Hospital Employee Benefit Plan shall not be "deemed to be an insurance company or other insuror, ... [n]or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts, ...." Absent these preemptions provisions of ERISA, the Louisiana statute would in terms apply to this employee benefit program and would require the mental illness treatment benefits to equal the physical illness treatment benefits. But ERISA preempts the Louisiana statute insofar as it relates to a self-insured plan, although it would not preempt if the plan were an insured plan.

We recognize that this conclusion results in a lack of uniformity, making the application of the state law turn upon whether the employee benefit plan is or is not an insurance plan. But we need not speculate as to whether this distinction is the proper interpretation of the statute. The Court in *Metropolitan Life* spoke directly to this issue:

> We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. By so doing we merely give life to a distinction created by Congress in the "deemer clause," a distinction Congress is aware of and one it has chosen not to alter.... Arguments as to the wisdom of [this] policy choice [ ] must be directed at Congress.

— U.S. at ——, 105 S.Ct. at 2393. A footnote appended to this quotation cites a congressional report in 1977 that recognized the difference in treatment between insured and non-insured plans, and the footnote also mentioned that a bill which would have preempted state laws applicable to insurance plans was reported to the Senate in 1981 but was not acted upon.

■ We conclude that this case is controlled by this authoritative interpretation of the preemption provisions contained in Section 514(a) and (b) of ERISA. 29 U.S.C. § 1144(a), (b)(2)(A), and (b)(2)(B). Because the plan under which appellant claimed benefits in this case is a self-insured plan, it is not within the exception to the preemption provisions of the federal law. The Louisiana law requiring that mental illness benefits equal physical illness benefits in such a plan, therefore, is not applicable because it is preempted by ERISA.[1]

The district court's holding was correct as to the Children's Hospital Plan even though at the time of its decision it did not have the benefit of the Supreme Court's authoritative interpretation in *Metropolitan Life.*

AFFIRMED.

---

1. Appellant also asserts that appellee agreed within the body of the Plan itself that Louisiana law would govern the Plan. The assertion is that ERISA, therefore, does not preempt Louisiana law. ERISA and the cases interpreting it are searched in vain for authority for the parties themselves to waive the statutory requirements. We must necessarily reject this argument. It is ERISA itself that determines the extent to which state law can be applicable to an ERISA program of benefits.