LABORDE, Judge.
This case presents the question of whether the Employee Retirement Income Security Act (ERISA), 29 U.S.C. secs. 1001-1381 (1982), preempts the right of an employee enrolled in a self-insured employee benefit plan to receive notice of the cancellation of his coverage under LSA-R.S. 22:636. The trial court concluded that the Louisiana Insurance Code controls this issue, and granted the plaintiff employee’s motion for summary judgment against his employer, Power Rig Drilling Company, and against Income Security Corporation, Inc. (ISC), administrators of the employee benefit plan. We reverse and remand on. the authority of La.C.C.P. art. 966 and Metropolitan Life Insurance Company v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), a case rendered after the decision of the trial court.
I.
Mr. Ronald E. Richard, plaintiff, began working for defendant, Power Rig Drilling Company, Inc. (Power Rig), in 1978. The company formed the Power Rig Drilling Co., Inc. Health Benefit Plan (plan). This plan is funded exclusively by employer contributions and is administered, but not insured, by Income Security Corporation, Inc. of Raleigh, North Carolina. Mr. Richard met the conditions of this plan, in which he enrolled himself and his family.
On October 28, 1982, Mr. Richard’s employment with Power Rig was unconditionally terminated because of lack of work (plaintiff’s rig was stacked). According to the unambiguous terms of the plan, coverage of any employee automatically ceases on the date of the termination of his employment. No notice of cancellation of coverage was forwarded to plaintiff. Mr. Richard was reemployed by Power Rig effective November 11, 1982. The plan provides that eligible employees who enroll are covered effective the first day of the month which follows the first 90 days of employment. Similarly, eligible dependents of the employee may be covered effective the first day of the month which follows 180 days of continuous employment by the employee.
Plaintiff’s then-pregnant wife, Darlene Marie Richard, entered the hospital on November 19, 1982. She delivered her baby and the pair was discharged from the hospital on November 21, 1982. Medical bills accrued and were forwarded by plaintiff to ISC for payment. Payment was refused by ISC because the expenses had been incurred after plaintiff had been terminated by Power Rig and before the new waiting period had elapsed.
Mr. Richard, individually and on behalf of the community of acquets and gains existing between Darlene Marie Richard and himself, filed suit to recover $3,238.60 in medical expenses plus interest, penalties, and attorney’s fees under LSA-R.S. 22:667. The trial court, without oral or written reasons, granted summary judgment in favor of plaintiff against both defendants in the amount of $2,334.83. Defendants’ motion for summary judgment was denied. On appeal, appellants urge that the trial court erred in finding that there was coverage under the plan. In sum, appellants assert that ERISA preempts the state law which requires notice of cancellation of the health plan. Appellee maintains that state *530 regulation of insurance controls, and that therefore Louisiana’s notice requirement was in effect, but not satisfied.
II.
ERISA comprehensively regulates employee pension and welfare plans. An employee welfare-benefit plan or welfare plan is defined as one which provides to employees “medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability [or] death,” whether these benefits are provided “through the purchase of insurance or otherwise.” 29 U.S.C. sec. 1002(1). Plans may self-insure (i.e., fund themselves) or they may purchase insurance for their participants. Plans that purchase insurance — so called “insured plans” — are affected by state laws that regulate the insurance industry. Metropolitan Life Insurance Company, 105 S.Ct. at 2385. Uninsured plans are insulated from state insurance regulation. Id. at 2393.
Section 514 of ERISA provides in pertinent part:
“(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C. sec. 1003(a) ] of this title and not exempt under section 4(b) [29 U.S.C. sec. 1003(b)] of this title.
* # * * * *
[(b)] (2)(A) Except as provided in sub-paragraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.
[ (b)(2) ] (B) Neither an employee benefit plan described in section 4(a) [29 U.S.C. sec. 1003(a) ] of this title, which is not exempt under section 4(b) [29 U.S.C. sec. 1003(b)] of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.”
These provisions have been explained in Dedeaux v. Pilot Life Insurance Company, 770 F.2d 1311 (5th Cir.1985):
“Section 514(a), the ‘preemption’ clause, embodies the general rule of preemption and speaks in sweeping terms. Section 514(b)(2)(A), or the so-called ‘saving’ clause, limits the scope of the preemption clause and essentially states that ERISA does not preempt any state law that regulates ‘insurance, banking, or securities.’ Section 514(b)(2)(B), the ‘deemer’ clause states, in part, that no benefit plan shall be construed to be an insurance company or engaged in the business of insurance for the purpose of any state law regulating insurance matters.”
Id. at 1314. Accord Metropolitan Life Insurance Company, supra; Children’s Hospital v. Whitcomb, 778 F.2d 239 (5th Cir.1985).
The “saving” clause has been interpreted broadly to save from ERISA preemption those state laws that regulate insurance. A prominent distinction is drawn between benefit plans that are insured and those that are uninsured.[1] The United States *531 Supreme Court has held that, while a state may not directly regulate an employee benefit plan, it may regulate an insured plan indirectly; this may be accomplished by imposing requirements on the insurer of the plan, instead of on the plan itself. An uninsured plan, however, is insulated from state regulation. Metropolitan Life Insurance Company, 105 S.Ct. at 2393; Mire v. Power Rig Drilling Company, 486 So.2d 228 (La.App. 3d Cir.1986). The Power Rig plan is concededly an uninsured plan.[2]
III.
Resolution of this case turns on whether the Power Rig plan is actually ERISA qualified. There are several documents in the record suggesting that the plan was ERISA qualified, but we cannot say that the status of the plan was established as of the time of plaintiffs termination.
Mr. Richard’s employment was terminated on October 28,1982; he was reemployed by Power Rig on November 11, 1982. Mrs. Richard entered the hospital on November 19, 1982 and was discharged on November 21, 1982. In an attempt to prove ERISA qualification, appellants refer us to a letter written by the District Director of the Internal Revenue Service declaring the Power Rig Benefit Plan exempt from federal income tax under Internal Revenue Code sec. 501(c)(9). The letter is dated August 18, 1983 and covers the accounting period ending March 31, 1983 (presumably fiscal year beginning April 1, 1982, and ending March 31, 1983). In our view, this does not establish ERISA qualification of the plan at the time of plaintiffs employment termination. Nor does the filing of an annual report of employee benefit plans for 1982 (I.R.S. form 5500) prove ERISA qualification. Although the Power Rig plan seems to qualify for ERISA treatment, a genuine dispute as to this “fact” remains. La.C.C.P. art. 966. The issue of the plan’s ERISA qualification has yet to be litigated. If the plan is found to be ERISA qualified on remand, this uninsured plan would be insulated from state insurance regulation under Metropolitan Life Insurance Company, supra. The granting of the summary judgment by the trial court was inappropriate; that judgment is reversed.
IV.
Appellee advances an unconvincing public policy argument that employers may avoid medical coverage liability simply by laying off former plan-qualified workers and then rehiring them. Appellee failed to plead that he was terminated to avoid payment of benefits. Besides, under ERISA, employment may not be terminated to avoid payment of benefits; if an employee is so terminated, he has the right to seek redress in federal or state court.
Appellee further argues that since he was unemployed for only 15 days, his employment was not actually terminated, but that he was merely temporarily layed off. Plaintiff's employment record unambiguously shows that he was fired due to insufficient work in the oil field. Fortune smiled on Mr. Richard in allowing him to find new employment so quickly. Assuming, arguendo, that plaintiff was layed off temporarily, the terms of the health plan *532 would still exclude him from coverage. Our holding in Hebert v. Tennessee Life Insurance Company, 224 So.2d 79 (La.App. 3d Cir.1969), is inapposite to the case sub judice. In Hebert, the policy contemplated a “[t]emporary Lay-off or Leave of Absence, ” and provided an additional grace period for such workers. The Power Rig plan does not contemplate such a distinction.
V.
We now must decide if defendants’ motion for summary judgment should be granted. As set forth above, a material fact is in genuine dispute as to the plan’s ERISA status as of October — November, 1982. In the interest of justice, we remand the case for further proceedings. We therefore reverse the judgment below and remand the case to the trial court for a determination consistent with the views expressed above. Costs of this appeal shall be assessed upon final disposition on the merits.
REVERSED AND REMANDED.

. Justice Blackmun, the voice of the unanimous Metropolitan court, was candid in his appraisal of the ERISA preemption scheme:
"We therefore decline to impose any limitation on the saving clause beyond those Congress imposed in the clause itself and in the ‘deemer clause' which modifies it. If a state law ‘regulates insurance,' as mandated-benefit laws do, it is not preempted. Nothing in the language, structure, or legislative history of the Act supports a more narrow reading of the clause, whether it be the Supreme Judicial Court’s attempt to save only state regulations unrelated to the substantive provisions of *531 ERISA, or the insurers' more speculative attempt to read the saving clause out of the statute.
We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. By so doing we merely give life to a distinction created by Congress in the ‘deemer clause,’ a distinction Congress is aware of and one it has chosen not to alter. We also are aware that appellants’ construction of the statute would eliminate some of the disuniformities currently facing national plans that enter into local markets to purchase insurance. Such disuniformities, however, are the inevitable result of the congressional decision to ‘save’ local insurance regulation. Arguments as to the wisdom of these policy choices must be directed at Congress.”
Metropolitan Life Insurance Company, 105 S.Ct. at 2393 (footnote omitted).

. Plaintiff represents this in his second supplemental and amending petition.