**FMC CORPORATION, a corporation, Plaintiff,**

**v.**

**Cynthia Ann HOLLIDAY, an individual, Defendant.**

**Civ. A. No. 88–1098.**

United States District Court, W.D. Pennsylvania.

March 14, 1989.

Charles Kelly, Pittsburgh, Pa., for plaintiff.

Thomas Johnson, Indiana, Pa., for defendant.

## MEMORANDUM OPINION

BLOCH, District Judge.

Plaintiff and defendant having agreed that the material facts of this action are uncontroverted, this matter is before the Court on cross-motions for summary judgment. The material facts are as follows.

Defendant Cynthia Ann Holliday (Holliday) was seriously injured in an automobile accident in Indiana County, Pennsylvania, on January 16, 1987, when she was 15 years old. She required extensive medical treatment, costing in excess of $178,000.

At all relevant times, Holliday's father was an employee of plaintiff FMC Corporation (FMC). As such, he subscribed to the FMC Salaried Health Care Plan (the Plan),

a self-insured employee welfare benefit plan. Pursuant to the Plan, FMC paid a substantial amount in medical benefits toward Holliday's treatment.

The Plan contained a coordination of benefits provision, pursuant to which it coordinated its benefits with those of other medical plans and "no-fault" auto insurance providing medical coverage. Thus, FMC did not pay any benefits until certain insurers, such as the Holliday's automobile insurance company, had paid the maximum amount that they would pay.

In addition, the Plan summary provides: The FMC self insured benefit program is automatically assigned the right of action against third parties in any situation in which benefits are paid to employees or their dependents. If you bring a liability claim against any third party, benefits payable under this Plan must be included in the claim, and when the claim is settled you must reimburse the Plan for the benefits provided. You are obligated to avoid doing anything which would prejudice the Plan's rights of reimbursement, and you are required to sign and deliver documents to evidence or secure those rights. Unless you sign the Company's "third-party reimbursement form," the Claims Administrator will not process any claim where there is possible liability on behalf of a third party.

(Plan summary, at 49). Gerald Holliday, defendant's father, had signed such a third-party reimbursement form.

On April 20, 1987, Gerald Holliday, as parent and natural guardian of the defendant, commenced a negligence action in the Court of Common Pleas of Indiana County, Pennsylvania, against the driver of the vehicle in which defendant was a passenger at the time of the accident. FMC has notified defendant that it intends to exercise its subrogation rights with respect to any amounts obtained as a result of this lawsuit. Defendant Holliday contends that § 1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law of 1984 (the Pennsylvania law), 75 Pa.C.S.A. § 1720, prohibits such subrogation. FMC argues that the Employee Income Retirement Se-

curity Act (ERISA) preempts the Pennsylvania law.

This Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties in this case have agreed that there is no genuine issue as to any material fact. This Court holds that the defendant is entitled to judgment as a matter of law.

### I. The Pennsylvania law applies to the Plan

■ Initially, of course, this Court must determine whether the Pennsylvania law would apply to the Plan at all. If § 1720 would not prohibit FMC from obtaining subrogation, then this Court need not decide whether ERISA preempts that section. There would be no applicable Pennsylvania law which might be preempted.

Section 1720 of the Pennsylvania law, 75 Pa.C.S.A. § 1720, provides:

> In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits in lieu thereof paid or payable under section 1719 (relating to coordination of benefits).

FMC clearly does not provide the required benefits or motor vehicle insurance referred to in §§ 1711, 1712 or 1715 of the Pennsylvania law, 75 Pa.C.S.A. §§ 1711, 1712, 1715. It does, however, provide the benefits referred to in § 1719. This section provides:

> (a) *General rule.*—Except for workers' compensation, a policy of insurance issued or delivered pursuant to this subchapter shall be primary. Any *program, group contract or other arrangement for payment of benefits ...* shall be construed to contain a provision that all benefits provided therein shall be in excess of and not in duplication of any valid and collectible first party benefits provided in section 1711, 1712 or 1715 or workers' compensation.
>
> (b) *Definition.*—As used in this section the term "program, group contract or other arrangement" includes, *but is not limited to,* benefits payable by a hospital plan corporation or a professional health service corporation....

75 Pa.C.S.A. § 1719 (emphasis added).

FMC contends that it is not a "program, group contract or other arrangement" under § 1719 for two reasons. First, FMC argues that, because this section specifically lists certain types of corporations incorporated to provide health care benefits or services, only those "programs, group contracts or other arrangements" come within the section. To accept this reasoning would be to ignore the express language of the statute providing that those types of corporations are not the only types constituting a "program, group contract or other arrangement" under § 1719. The statute clearly states that the term "programs, group contracts or other arrangements" is not limited to the listed corporations.

Second, FMC contends that a comparison of § 1720 to the subrogation provision of the prior Pennsylvania No–Fault Motor Vehicle Insurance Act (the No–Fault Act) indicates that the Pennsylvania legislature did not intend to prohibit subrogation on the part of entities such as the Plan. FMC notes that § 111(a)(4) of the No–Fault Act provided that "[i]n no event shall *any entity* providing benefits other than no-fault benefits ... have any right of subrogation with respect to said benefits." 40 P.S. § 1009.111(a)(4) (emphasis added). FMC claims that, by changing the description of those prohibited subrogation rights from "any entity" to "program, group contract or other arrangement," the legislature must have intended to exclude plans such as the one at issue from being affected by the subrogation provision.

It is true that when words of a later statute differ from those of a previous one

on the same or a related subject, it is presumed that the legislature intended them to have a different meaning. *Klein v. Republic Steel Corp.*, 435 F.2d 762, 765–66 (3d Cir.1970). It is not true, however, that this Court may assume that the different meaning intended is that which the plaintiff advocates. FMC attempts to convince this Court that the Court should make this assumption because, in another portion of the Pennsylvania law, the Pennsylvania legislature has afforded a right of subrogation to Assigned Claims Plans. 75 Pa.C.S.A. § 1756.

Assigned Claims Plans are plans designed to provide medical benefits to, *inter alia,* people not entitled to receive first-party benefits under the Pennsylvania law. 75 Pa.C.S.A. § 1752. FMC argues that the Pennsylvania legislature could not have intended to allow Assigned Claims Plans a right of subrogation but prohibit subrogation on the part of employee welfare benefit plans providing benefits in addition to first-party benefits.

It is entirely possible that this is exactly what the Pennsylvania legislature intended to do. Motor vehicle insurance companies are required by law to establish Assigned Claims Plans. Those who would recover under such plans may not be otherwise paying insurance premiums for their coverage. Furthermore, in these instances, the Assigned Claims Plans pay benefits instead of first-party benefits, because the recipients are not eligible to receive first-party benefits. In such an instance, the legislature may have intended to allow Assigned Claims Plans some right of subrogation while other entities, providing benefits in addition to first-party benefits, are not able to obtain subrogation. Without more convincing evidence that the Pennsylvania legislature did not intend § 1720 to apply to employee welfare benefit plans, this Court will not read out of the statute the language which explicitly indicates that the term "program, group contract or other arrangement" includes more than certain types of health care or health service corporations.

Moreover, as defendant points out, FMC has availed itself of the benefits of the Pennsylvania law's "coordination of benefits" provision as set forth at § 1719. FMC required that the Hollidays' motor vehicle insurer pay up to its policy limits before FMC would provide benefits. Thus, by its own actions, FMC has indicated that it is the type of entity referred to in § 1719.

Thus, if it is not preempted, § 1720 of the Pennsylvania law would prohibit FMC's exercise of subrogation rights in any amount Holliday recovered in the case in the Indiana County court.

## II. ERISA's preemption provisions

Section 514(a) of ERISA, 29 U.S.C. § 1144(a), provides generally that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." There is one exception to this broad preemption provision, contained in a "savings clause," providing:

> Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. § 1144(b)(2)(A).

The savings clause does not automatically exempt all state laws regulating insurance from preemption, however, because it is modified by the so-called "deemer clause," which provides:

> Neither an employee benefit plan … nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B).

Thus, in order to determine whether ERISA preempts the Pennsylvania law in this case, this Court must first determine whether the Pennsylvania law relates to an

employee benefit plan. Next, this Court must determine whether, even if the Pennsylvania law relates to an employee benefit plan, it is exempted from preemption by the savings clause because it regulates insurance. Finally, if the answers to the first two inquiries are affirmative, this Court must determine whether the "deemer clause" nevertheless operates to prevent the Pennsylvania law from being saved from preemption. *See Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987).

### A. The Pennsylvania law "relates to" the Plan

■ A state law relates to an employee benefit plan if it has a connection with or reference to such a plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Preemption is not limited to state laws specifically designed to affect employee benefit plans. *Id.* at 98, 103 S.Ct. at 2900. Instead, ERISA preempts even common-law causes of action which seek remedies for improper processing of a claim for benefits under an ERISA plan. *Pilot Life*, 481 U.S. at 48, 107 S.Ct. at 1553.

FMC argues that § 1720 of the Pennsylvania law does not "relate to" the Plan because the Pennsylvania legislature did not intend this provision to apply to employee welfare benefit plans such as the plan at issue. This argument is without merit. This Court has already determined that the Pennsylvania law does indeed apply to the Plan.

Furthermore, the Pennsylvania law need not have been specifically designed to affect employee benefit plans to relate to such plans. *Shaw*, 463 U.S. at 98, 103 S.Ct. at 2900. The phrase "relate to" has been given the broadest common-sense meaning. *Shiffler v. Equitable Life Assurance Society of the United States*, 838 F.2d 78, 81 (3d Cir.1988). Therefore, as long as a lawsuit would have a connection with an employee benefit plan, it relates to it so that any state causes of action upon which the suit is based are preempted.

Finally, this Court notes that it would be anomalous for FMC to assert that the law does not relate to the Plan when FMC is the party asserting preemption. ERISA preempts state law only if that law relates to an employee benefit plan. Thus, this Court must assume that FMC's statement that it will only "assume *arguendo*" that the Pennsylvania law relates to the Plan was inserted into FMC's brief merely in order to preserve FMC's argument that the law does not apply to the Plan in the first place.

### B. The Pennsylvania law regulates insurance

To determine whether a state law regulates insurance, this Court must examine the law both to determine whether it comports with a common-sense understanding of the phrase "regulates insurance" and to ascertain whether it affects the business of insurance as that business is defined in the McCarran–Ferguson Act. *See Pilot Life*, 481 U.S. at 50–51, 107 S.Ct. at 1554–1555; *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 743, 105 S.Ct. 2380, 2391, 85 L.Ed.2d 728 (1985). No one factor is dispositive; rather, each is instructive. *Union Labor Life Insurance Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982); *Insurance Board Under Social Insurance Plan of Bethlehem Steel Corp. v. Muir*, 819 F.2d 408, 411 (3d Cir.1987); *United Food and Commercial Workers v. Pacyga*, 801 F.2d 1157, 1161 (9th Cir.1986).

In this case, the parties have agreed that this law regulates insurance. Thus, the Pennsylvania law is saved from preemption by 29 U.S.C. § 1144(b)(2)(A), unless the "deemer clause" prohibits the law from being saved from preemption.

### C. The deemer clause does not operate to bring the Pennsylvania law back within the scope of ERISA preemption

■ As previously noted, the deemer clause provides that state laws purporting to regulate insurance may not directly regulate employee benefit plans by "deeming"

them to be insurance companies for the purposes of such laws. *Pilot Life*, 481 U.S. at 45, 107 S.Ct. at 1552. The Plan at issue is a self-insured plan. That is, FMC does not provide benefits for its employees by taking out a group insurance policy with an insurance company. Instead, FMC provides the funds needed to pay any medical benefits due under the Plan out of its own assets.

FMC contends that to apply the Pennsylvania law to a self-insured plan, one must first "deem" the plan to be an insurance company. Thus, such application of the Pennsylvania law would violate the deemer clause. As a result, the Pennsylvania law as it applies to self-insured plans is preempted, even though it regulates insurance.

Following this reasoning, a number of courts have held that certain state laws regulating insurance are nonetheless preempted as they apply to self-insured plans. *See, e.g., Pacyga*, 801 F.2d 1157 (Arizona anti-subrogation law preempted as applied to self-insured plans); *Powell v. Chesapeake and Potomac Telephone Co.*, 780 F.2d 419 (4th Cir.), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986) (common-law claims relating to mishandling of benefits requests preempted as applied to self-insured plan); *Children's Hospital v. Whitcomb*, 778 F.2d 239 (5th Cir.1985) (Louisiana anit-discrimination benefits statute preempted as applied to self-insured plans); *Kilmer v. Central Counties Bank*, 623 F.Supp. 994 (W.D.Pa.1985) (portion of No–Fault Act permitting double recovery of benefits preempted as applied to self-insured plans).

Application of this reasoning would result in certain employee benefit plans being free from state laws regulating insurance merely because they chose to self-insure. Indeed, the Supreme Court itself has stated in *dicta* that, through the deemer clause, Congress has distinguished between insured and self-insured plans in such a way. "By doing so we merely give life to a distinction created by Congress in the 'deemer clause,' a distinction Congress is aware of and one it has chosen not to

alter." *Metropolitan Life*, 471 U.S. at 747, 105 S.Ct. at 2393 (footnote omitted). *See also Board of Trustees of Montana Teamsters Employers v. Coyne*, 628 F.Supp. 561, 564 (D.Mont.1986).

On the contrary, however, it is possible to read the three interlocking preemption provisions of ERISA—the preemption section, the savings clause and the deemer clause—to give life to the deemer clause yet not presume that Congress intended to make an illogical distinction between insured and self-insured plans. In *Northern Group Services, Inc. v. Auto Owners Insurance Co.*, 833 F.2d 85 (6th Cir.), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988), the Sixth Circuit Court of Appeals held that the deemer clause does not automatically immunize self-insured employee benefit plans from state laws regulating insurance. 833 F.2d at 91. In *Northern Group Services*, certain employee benefit plans, some insured by others and some self-insured, attempted to make no-fault automobile insurers primarily liable and their own plans secondarily liable for benefits. When the no-fault automobile insurers objected, citing Michigan insurance law, the plans argued that the Michigan law was preempted, by virtue of the deemer clause in the case of the self-insured plans.

The Court noted that Congress has expressly declared in two different ERISA subsections that ERISA does not preempt state laws regulating insurance. *Id.; see* 29 U.S.C. §§ 1144(b)(2)(A), 1144(d). It stated:

> In the face of this redoubled statutory preservation of the principle favoring state regulation of insurance, it appears contrary to the overall legislative purpose to read the deemer clause broadly to bar all state regulation of self-insured plans. In this area of traditional state regulation, "the presumption is against preemption."

833 F.2d at 92, *quoting Metropolitan Life*, 471 U.S. at 741, 105 S.Ct. at 2390.

The Court in *Northern Group Services* noted that the legislative history of the deemer clause was ambiguous. In fact,

certain portions of the legislative history indicate that Congress' central concern in adopting the ERISA preemption scheme was "to avoid intentional—and perhaps pretextual—attempts by states to restrict the discretion of ERISA plans to engage in practices that otherwise would be permitted by federal law." 833 F.2d at 93. In *Northern Group Services,* as in this case, the parties did not argue that the state was, intentionally or by pretext, attempting to focus specifically on ERISA plans in the statutes at issue.

The Court in *Northern Group Services* held:

> In the absence of a showing of state purpose specifically to regulate the content of welfare benefits provided by ERISA, the effect of the deemer clause should be assessed by a balancing of the interests in federal uniformity against those of state primacy in the regulation of insurance.

*Id.*

The Court in *Northern Group Services* ruled that exempting self-insurers from the Michigan law requiring that insurers coordinate benefits so that no-fault automobile insurers were secondarily liable would disrupt the state's ability to administer a uniform scheme of coordination of benefits. Such disruption would frustrate the state's goal of cost containment, create unpredictability and possibly undermine the financial stability of no-fault insurers. Similarly, in this case, exempting self-insurers from the Pennsylvania law prohibiting subrogation would disrupt the state's ability to administer a generally uniform scheme of prohibiting subrogation, except in certain specific instances in which Assigned Claims Plans are required by law to provide benefits to those who would not otherwise receive them. In those incidents, as a matter of equity, the state has chosen to permit subrogation. Otherwise, the state's uniform goal of prohibiting subrogation remains intact.

Furthermore, by holding that § 1720 of the Pennsylvania law as applied to self-insured plans comes within the deemer clause and is thus preempted by ERISA, this Court would be permitting plans to ensure that they could obtain subrogation merely by deciding to self-insure.

Weighing this injury to the state scheme against the federal interest in uniform administration of ERISA plans, it is clear that the injury to the state scheme far outweighs any federal interest in developing a "federal common law" of subrogation rights of self-insured ERISA plans. This area of insurance law, like the area of coordination of benefits, has been developed by each state over a period of years. *See* 833 F.2d at 93–94. Injury to the state scheme would be especially great when federal law would encroach upon state law in an area in which states enjoy "general authority and autonomy"—insurance regulation. *Id.*

As noted in *Northern Group Services,* this approach does not necessarily contravene the *Metropolitan Life dicta* quoted earlier in this opinion. The rule enunciated by the Court in *Northern Group Services* and followed by this Court today preserves a distinction between plans insured by others and those which are self-insured. Insured plans are *per se* open to indirect regulation. Self-insured plans are subject to state regulation only when no independent federal interest in national uniformity, outweighing the state interest in insurance regulation, exists to inform and guide the creation of a federal common law in the area at issue. *Id.* at 95.

Thus, under this reasoning, because no such independent federal interest exists, § 1720 of the Pennsylvania law as applied to self-insured plans such as the one at issue is not excluded from the savings clause by the deemer clause. ERISA does not preempt § 1720 because of the savings clause, so the terms of the Plan do not govern the subrogation issue. FMC may not assert subrogation rights to any recovery Holliday obtains in the suit pending before the Court of Common Pleas of Indiana County.

An appropriate Order will be issued.

### JUDGMENT ORDER

AND NOW, this 14th day of March, 1989, upon consideration of Plaintiff's Mo-

tion for Summary Judgment filed in the above captioned matter on December 2, 1988, IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Defendant's Motion for Summary Judgment filed in the above captioned matter on December 5, 1988, IT IS HEREBY ORDERED that said Motion is GRANTED.